Lenard E. Schwartzer
Nevada Bar No. 0399
Jeanette E. McPherson
Nevada Bar No. 5423
Jason A. Imes
Nevada Bar No. 7030
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com
*Proposed* Attorneys for Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>CAREFREE WILLOWS, LLC,<br><br>Debtor. | Case No. BK-S-10-29932-MKN<br>Chapter 11<br><br>**EMERGENCY MOTION FOR AN ORDER AUTHORIZING THE USE OF CASH COLLATERAL ON AN INTERIM AND CONTINUING BASIS**<br><br>Date: OST Requested<br>Time: OST Requested |

CAREFREE WILLOWS, LLC, the debtor and debtor-in-possession ("Debtor") in the above-captioned chapter 11 case, by and through undersigned proposed counsel and pursuant to 11 U.S.C. § 363, hereby files this Emergency Motion For An Order Authorizing The Use Of Cash Collateral On An Interim And Continuing Basis ("Motion"). This Motion is made and based upon 11 U.S.C. § 363, Fed. R. Bankr. P. 4001(b) and 9014, and Rules 4001 and 9014 of the Local Rules of Bankruptcy Procedure (the "Local Rules"). As set forth in the Motion, the Debtor respectfully requests that this Court enter an order authorizing the use of cash collateral on an interim and continuing basis. **The Debtor seeks leave to utilize the revenue generated by its senior housing complex (the "Revenue") to maintain the senior housing complex, management and employees, provide services to the tenants, for payment of maintenance expenses, real estate taxes, insurance premiums, utilities incurred by the senior housing complex, and for no**

1  **other purposes. The proposed budget is attached hereto as Exhibit "1." The balance of the**
2  **Revenue collected will be segregated and <u>not</u> used for other purposes.**

3      This Motion is made and based upon the Points and Authorities set forth herein, the
4  Declaration of Kenneth Templeton filed concurrently herewith, and the oral arguments of counsel
5  the Court may wish to entertain at a hearing on the Motion, if any.

## POINTS AND AUTHORITIES

### FACTS

8      1.    The Debtor is the owner of an existing 300 unit senior housing complex, located at
9  3250 S. Town Center Drive, Las Vegas, Nevada (the "Property").

10     2.    On October 21, 2010 (the "Petition Date"), the Debtor commenced this case by
11 filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

12     3.    By a deed of trust and assignment of rents[1] between Debtor and Union Bank of
13 California ("Secured Creditor"), Debtor granted Secured Creditor a security interest in, among
14 other things, the revenue Debtor collects. Accordingly, the monthly revenue collected from the
15 residents at Carefree Willows senior housing complex constitute the Secured Creditor's cash
16 collateral ("Cash Collateral").

17     4.    The Debtor request authority to use the Secured Creditor's Cash Collateral pursuant
18 to 11 U.S.C. § 363 to **maintain the senior housing complex, management and employees,**
19 **provide services to the tenants, for payment of maintenance expenses, real estate taxes,**
20 **insurance premiums, and utilities incurred by the senior housing complex and for no other**
21 **purposes**. The balance of the revenue collected will be segregated.

22     5.    At this senior housing complex, the management provides services to the tenants
23 that go far beyond the services provided at regular senior housing complexes. The provision of
24 these services is the basis for charging rental rates above the rates charged by regular senior
25 housing complexes. The services provided includes:

---

[1] The Debtor notes that it hereby reserves any rights to dispute the amount, validity and priority of any of the deeds of trust and assignments of rents.

- Daily breakfasts
- Planned daily activities and social events
- On-site banking, beauty and barber salon, and pharmacy delivery
- Vital health screenings, education and wellness seminars
- Social events and excursions
- Free email and internet access
- Complimentary transportation to grocery stores, drug stores, banks, restaurants, sports events, and entertainment venues

6.  Allowing the Debtor to continue to use the Cash Collateral to operate its business allows the Debtor to exist and attempt to reorganize its debt. Doing so allows the Debtor to maximize the value of the Debtor based upon operating performance that will allow the Debtor to maintain its "going concern value."

7.  The Debtor's anticipated revenue and expenses for the senior housing complex over the next 6 months are expected to be more than sufficient to pay for the maintenance expenses, tenant services, real estate taxes, insurance premiums, and utilities incurred by the senior housing complex.

8.  Allowing the Debtor to continue to use the revenue to maintain the senior housing complex will provide time for the Debtor to attempt to reorganize its debts.

9.  Moreover, the Secured Creditor is protected by a replacement lien under 11 U.S.C. § 361 in proceeds of the same postpetition collateral, to the extent that: 1) the Secured Creditor's prepetition interest is valid and nonavoidable, and 2) prepetition cash and proceeds are utilized by the Debtor in this case. The priority of this replacement lien will be the same as its prepetition priority.

10. Accordingly, the Secured Creditor should approve the Debtor's use of Cash Collateral with ordinary monthly operating reporting and ordinary replacement liens. If the Secured Creditor does not consent, the Debtor asks the Court to grant this Motion over the Secured Creditor's objection. Absent authorization to use cash collateral, the Debtor will have insufficient cash available to maintain the senior housing complex, provide tenant services, and

preserve the value of the Debtor's estate.

11. By making this Motion, the Debtor is not waiving: (a) the right to dispute the issue of what portion, if any, of its funds are cash collateral or the right to dispute the debt or lien of any creditor, (b) the right to seek Court authority to compensate professionals retained by the estate, (c) any rights to surcharge any collateral, (d) any rights to challenge the extent, priority or validity of any lien secured by the business, or (e) any right to avoid any lien secured by the business pursuant to 11 U.S.C. §§ 542 to 551.

12. Bankruptcy Rule 4001(b) governs the procedure for consideration of motions to use cash collateral. Rule 4001(b)(2) provides for an expedited consideration of a request for interim use of cash collateral pending a final hearing.

13. The Ninth Circuit Court of Appeals has recognized that immediate interim relief may be crucial to the success of a corporate reorganization:

> We realize that in certain circumstances, the entire reorganization effort may be thwarted if emergency leave is withheld and that reorganization under the Bankruptcy Code is a perilous process, seldom more so that at the outset of the proceeding when the debtor is often without sufficient cash flow to fund a central business operation. *In re Sullivan Ford Sales,* 2 B.R. 350; 355 (Bankr. D. ME 1986). It is for this reason that Congress specified that hearings concerning the use of cash collateral 'shall be scheduled in accordance with the needs of the debtor.' 11 U.S.C. §363(c)(3).

*In re Center Wholesale, Inc.*, 795 F.2d 1440, 1449 n 21 (9th Cir. 1985).

13. Because the Debtor's cash needs are immediate and absent satisfying those needs, the Debtor will be forced to terminate maintenance of the senior housing complex and the provision of tenant services, and minimizing the potential value of its estate for creditors, the Debtor has demonstrated "immediate and irreparable" harm to the estate absent emergency consideration of the relief requested in this Motion.

## **NOTICE**

### **Notice With Respect to Interim Hearing**

14. The Debtor will provide a copy of the Motion and the Notice of Hearing by mail to the Secured Creditor, its counsel, and other interested parties.

## INTERIM RELIEF REQUESTED

## (Expedited Hearing Requested)

15.     Within the meaning of F.R.B.P. 4001(b)(2), the court may conduct a final hearing on a motion for authority to use cash collateral no earlier than fourteen (14) days following service of the Motion, but if requested, the Court may conduct an interim hearing within such interim period and authorize credit to the extent necessary to avoid imminent and irreparable harm to the estate pending a final hearing. Without the use of the cash collateral, the Debtor may be in danger of not being able to immediately meet its liquidity needs, jeopardizing the going concern value of the Debtor. If the Debtor is able to use the cash collateral, then the Debtor believes it will be able to continue to maintain the senior housing complex and provide tenant services through confirmation of a plan of reorganization or liquidation.

16.     The Debtor respectfully requests that this Court conduct an expedited interim hearing and authorize the Debtor to use the cash collateral as requested herein.

## FINAL HEARING REQUESTED

17.     The Debtor respectfully requests an interim hearing by the Court, on an emergency basis, to be followed by a final hearing not less than fourteen (14) days thereafter.

## STATEMENT OF EXIGENT CIRCUMSTANCES

18.     The Debtor requests that the interim hearing requested herein be considered on an emergency basis because the relief requested is critical to the administration of its estate and to the operation and maintenance of the senior housing complex.

## Memorandum of Law

11 U.S.C. § 363(c)(2) provides that:

> The Trustee may not use, sell, or lease cash collateral under paragraph 1 (of this subsection) unless-
>
> (A) Each entity that has an interest in such cash collateral consents; or
> (B) The Court, after notice in a hearing, authorizes such use, sale, or lease in accordance with the provisions of this Section.

1  Assuming a debtor-in-possession or trustee requires court authorization for use of cash
2  collateral, then 11 U.S.C. § 361 provides, in pertinent part, as follows:

> When adequate protection is required under Sections 362, 363, or 364 of this Title of an interest of an entity in property, such adequate protection may be provided by:
>
> . . .
>
> (2) Providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entities' interest in such property...

11 U.S.C. § 363(e) provides that, upon request of an entity that has an interest in property to be used by a debtor, the court "shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." *Id*.

Courts have considered "adequate protection" a concept which is to be decided flexibly on the proverbial "case-by-case" basis. *In re O'Connor*, 808 F.2d 1393, 1397 (*citing In re Martin*, 761 F.2d 472 (8th Cir. 1985); *In re Monroe Park*, 17 B.R. 934 (D.C. Del. 1982)).

"Since 'value' is the linchpin of adequate protection, and since value is a function of many factual variables, it logically follows that adequate protection is a question of fact." *Id*. (*citing In re Martin*, 761 F.2d at 472; *In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017 (11th Cir. 1984). In order to encourage the Debtor's efforts in the administration period prior to the proposal of a reorganization plan, the court should be flexible in applying the adequate protection standard. *O'Connor*, 808 F.2d at 1398 (*citing Martin*, 761 F.2d at 476). In doing so, however, care must be exercised to ensure that the vested property rights of the secured creditor are not eroded, and the values and risks bargained for by that creditor prior to bankruptcy are not detrimentally affected. *Id*.

The Debtor submits that the use of the Cash Collateral solely for the maintenance of the senior housing complex, provision of tenant services, utilities, insurance premiums, real estate taxes and fees is in the best interest of the Secured Creditor, the residents of the senior housing complex, and the Debtor's estate. The use of the Cash Collateral will allow the Debtor to continue to fund the operation of the senior housing complex in the ordinary course, and preserve and enhance the value of the senior housing complex for the benefit of the Secured Creditor and the

Debtor's estate.

Under the circumstances set forth herein, the granting of the relief requested by this Motion is warranted. The Secured Creditor's lien position is best protected by the maintenance of the senior housing complex, the retention of the residents, and by virtue of the replacement lien in the post-petition revenue and its liens on the property of the Debtor.

## **CONCLUSION**

In consideration of the foregoing, Debtor respectfully requests that the Court (i) set an emergency hearing, (ii) enter the proposed Interim Order permitting interim the use of cash collateral on the terms and conditions set forth therein, (iii) set a hearing date for entry of a final order permitting the use of cash collateral, and (iv) grant such other relief as the Court deems appropriate.

Pursuant to LR 9021, a proposed form of order is attached as **Exhibit "2."**

Dated this 22nd day of October, 2010.

   /s/   Lenard E. Schwartzer
Lenard E. Schwartzer, Esq.
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146-5308
Proposed Attorneys for Debtor and
Debtor in Possession

# EXHIBIT "1"

## Carefree Willows LLC Projected Operating Budget and Cash Flow

| | | November-10 Budget | December-10 Budget | January-11 Budget | February-11 Budget | March-11 Budget | April-11 Budget | Total Budget |
|---|---|---|---|---|---|---|---|---|
| | **Property Income** | | | | | | | |
| 4011 | Rental Income | $287,000 | $289,870 | $292,769 | $295,696 | $298,653 | $301,640 | $1,765,628 |
| 4020 | Rent Concessions | ($59,000) | ($58,410) | ($57,826) | ($57,248) | ($56,675) | ($56,108) | ($345,267) |
| 4021 | Guest Suite Income | $6,200 | $6,200 | $6,200 | $6,200 | $5,600 | $4,000 | $34,400 |
| 4025 | Beauty Shop Income | $200 | $200 | $200 | $200 | $200 | $200 | $1,200 |
| 4360 | Garage Rent | $2,100 | $2,100 | $2,100 | $2,100 | $2,100 | $2,100 | $12,600 |
| 4365 | Appliance Rent/Sale | $2,300 | $2,300 | $2,300 | $2,300 | $2,300 | $2,300 | $13,800 |
| 4370 | Pet Rent | $650 | $650 | $650 | $650 | $650 | $650 | $3,900 |
| 4501 | Application Fee | $300 | $300 | $300 | $300 | $300 | $300 | $1,800 |
| 4502 | Smokers Fee Charge | $350 | $350 | $350 | $350 | $350 | $350 | $2,100 |
| 4503 | Pet Fee Non Refundable | $750 | $750 | $750 | $750 | $750 | $750 | $4,500 |
| 4504 | Forfeited Security Deposits | $600 | $600 | $600 | $600 | $600 | $600 | $3,600 |
| 4506 | Material Recovery | $600 | $600 | $600 | $600 | $600 | $600 | $3,600 |
| 4510 | Community Fee | $500 | $500 | $500 | $500 | $500 | $500 | $3,000 |
| 4511 | Termination Fee | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $12,000 |
| 4520 | Vending/Laundry Income | $120 | $120 | $120 | $120 | $120 | $120 | $720 |
| 4522 | Parking Income | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $6,000 |
| 4540 | Late Fee | $500 | $500 | $500 | $500 | $500 | $500 | $3,000 |
| 4541 | NSF Charges | $50 | $50 | $50 | $50 | $50 | $50 | $300 |
| | **Total Property Income** | $246,220 | $249,680 | $253,163 | $256,669 | $259,598 | $261,551 | $1,526,881 |
| | | | | | | | | |
| | **Property Operating Expenses** | | | | | | | |
| 6210 | Newspaper | $2,700 | $2,700 | $2,700 | $2,700 | $2,700 | $2,700 | $16,200 |
| 6221 | Magazine Advertising | $950 | $950 | $950 | $950 | $950 | $950 | $5,700 |
| 6222 | Internet Advertising | $1,800 | $1,800 | $1,800 | $1,800 | $1,800 | $1,800 | $10,800 |
| 6223 | Yellow Pages | $150 | $150 | $150 | $150 | $150 | $150 | $900 |
| 6224 | TV Advertising | $4,300 | $4,300 | $4,300 | $4,300 | $4,300 | $4,300 | $25,800 |
| 6230 | Other Advertising | $18 | $18 | $18 | $18 | $18 | $18 | $108 |
| 6231 | Direct Mail Advertising | $75 | $75 | $75 | $75 | $75 | $75 | $450 |
| 6235 | Flags Banners Signs | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 6236 | Referral Fees | $300 | $300 | $300 | $300 | $300 | $300 | $1,800 |
| 6237 | Resident Retentions | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $6,000 |
| 6243 | Brochures | $200 | $200 | $200 | $200 | $200 | $200 | $1,200 |
| 6305 | Electric | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $30,000 |
| 6306 | Gas | $800 | $800 | $800 | $800 | $800 | $800 | $4,800 |
| 6307 | Water | $2,400 | $2,400 | $2,400 | $2,400 | $2,400 | $2,400 | $14,400 |
| 6308 | Sewer | $3,538 | $3,538 | $3,538 | $3,538 | $3,538 | $3,538 | $21,228 |
| 6309 | Garbage | $2,300 | $2,300 | $2,300 | $2,300 | $2,300 | $2,300 | $13,800 |
| 6310 | Cable TV | $34 | $34 | $34 | $34 | $34 | $34 | $204 |
| 6401 | Activities Expense | $2,800 | $2,800 | $2,800 | $2,800 | $2,800 | $2,800 | $16,800 |
| 6402 | Shuttle Expenses | $1,360 | $1,360 | $1,360 | $1,360 | $1,360 | $1,360 | $8,160 |
| 6403 | Other Activity Expenses | $900 | $900 | $900 | $900 | $900 | $900 | $5,400 |
| 6405 | Activities Recovery | ($400) | ($400) | ($400) | ($400) | ($400) | ($400) | ($2,400) |
| 6406 | Lunch Program | $100 | $100 | $100 | $100 | $100 | $100 | $600 |
| 6510 | Landscaping | $4,050 | $2,550 | $2,550 | $2,550 | $2,550 | $4,050 | $18,300 |
| 6511 | Pool/Fountain | $700 | $700 | $700 | $700 | $700 | $700 | $4,200 |
| 6512 | HVAC | $400 | $400 | $400 | $400 | $400 | $400 | $2,400 |
| 6513 | Appliance Repairs | $150 | $150 | $150 | $150 | $150 | $150 | $900 |
| 6514 | Electrical | $300 | $300 | $300 | $300 | $300 | $300 | $1,800 |
| 6515 | Plumbing | $200 | $200 | $200 | $200 | $200 | $200 | $1,200 |
| 6516 | Parking/Sidewalk Maintenance | $100 | $100 | $100 | $100 | $100 | $100 | $600 |
| 6518 | Gates/Fencing/Walls | $100 | $100 | $100 | $100 | $100 | $100 | $600 |
| 6519 | Lighting | $300 | $300 | $300 | $300 | $300 | $300 | $1,800 |
| 6520 | Elevators | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $18,000 |
| 6521 | Fire Safety System | $700 | $700 | $700 | $700 | $700 | $700 | $4,200 |
| 6522 | Keys/Locks | $100 | $100 | $100 | $100 | $100 | $100 | $600 |
| 6523 | Painting | $100 | $100 | $100 | $100 | $100 | $100 | $600 |
| 6524 | Windows | $50 | $50 | $50 | $50 | $50 | $50 | $300 |
| 6525 | Carpet Cleaning/Repairs | $100 | $100 | $100 | $100 | $100 | $100 | $600 |
| 6529 | General Repairs & Maintenance | $150 | $150 | $150 | $150 | $150 | $150 | $900 |
| 6530 | Pest Control | $500 | $500 | $500 | $500 | $500 | $500 | $3,000 |
| 6533 | Janitorial Supplies | $400 | $400 | $400 | $400 | $400 | $400 | $2,400 |
| 6537 | Alarm | $150 | $150 | $150 | $150 | $150 | $150 | $900 |
| 6538 | Unit Upgrades | $150 | $150 | $150 | $150 | $150 | $150 | $900 |
| 6541 | Aquarium Maintenance | $600 | $600 | $600 | $600 | $600 | $600 | $3,600 |
| 6715 | Electricity Vacancies | $1,400 | $1,400 | $1,400 | $1,400 | $1,400 | $1,400 | $8,400 |
| 6720 | Painting/Drywall | $100 | $100 | $100 | $100 | $100 | $100 | $600 |
| 6730 | Carpet Cleaning | $500 | $500 | $500 | $500 | $500 | $500 | $3,000 |

## Carefree Willows LLC Projected Operating Budget and Cash Flow

| | | November-10 Budget | December-10 Budget | January-11 Budget | February-11 Budget | March-11 Budget | April-11 Budget | Total Budget |
|---|---|---|---|---|---|---|---|---|
| 6731 | Flooring Replacements | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 6750 | Other Vacancy Expenses | $150 | $150 | $150 | $150 | $150 | $150 | $900 |
| 6810 | Guest Suite Expenses | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $6,600 |
| 6910 | Maintenance Wages | $6,500 | $6,500 | $6,500 | $6,500 | $6,500 | $9,750 | $42,250 |
| 6915 | Office Wages | $10,100 | $10,100 | $10,100 | $10,100 | $10,100 | $15,150 | $65,650 |
| 6916 | Activities Wages | $5,100 | $5,100 | $5,100 | $5,100 | $5,100 | $7,650 | $33,150 |
| 6919 | Commissions | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $18,000 |
| 6951 | Payroll Taxes | $2,717 | $2,717 | $2,717 | $2,717 | $2,717 | $3,911 | $17,496 |
| 6952 | Workers Comp Insurance | $375 | $375 | $375 | $375 | $375 | $375 | $2,250 |
| 6961 | Group Insurance | $600 | $600 | $600 | $600 | $600 | $600 | $3,600 |
| 6962 | Rent Concessions | $1,138 | $1,138 | $1,138 | $1,138 | $1,138 | $1,138 | $6,828 |
| 6963 | Employee Incentives | $100 | $100 | $100 | $100 | $100 | $100 | $600 |
| 6964 | Educations/Seminars | $120 | $120 | $120 | $120 | $120 | $120 | $720 |
| 6965 | 401K/Profit Sharing | $30 | $30 | $30 | $30 | $30 | $30 | $180 |
| 6981 | Uniforms | $165 | $165 | $165 | $165 | $165 | $165 | $990 |
| 6982 | Payroll Processing | $135 | $135 | $135 | $135 | $135 | $135 | $810 |
| 6983 | Temporary Labor | $2,800 | $2,800 | $2,800 | $2,800 | $2,800 | $2,800 | $16,800 |
| 6984 | Auto Allowance | $250 | $250 | $250 | $250 | $250 | $250 | $1,500 |
| 6987 | Drug Test/Credit Check | $80 | $80 | $80 | $80 | $80 | $80 | $480 |
| 7005 | Office Supplies | $350 | $350 | $350 | $350 | $350 | $350 | $2,100 |
| 7006 | Postage/Freight | $150 | $150 | $150 | $150 | $150 | $150 | $900 |
| 7008 | Furniture/Equipment Expense | $250 | $250 | $250 | $250 | $250 | $250 | $1,500 |
| 7009 | Computer Support | $380 | $380 | $380 | $380 | $380 | $380 | $2,280 |
| 7010 | Accounting/Legal/Professional | $40 | $40 | $40 | $40 | $40 | $40 | $240 |
| 7014 | Dues & Subscriptions | $10 | $10 | $10 | $10 | $10 | $10 | $60 |
| 7022 | Forms & Printing | $50 | $50 | $50 | $50 | $50 | $50 | $300 |
| 7023 | Answering Service | $100 | $100 | $100 | $100 | $100 | $100 | $600 |
| 7024 | Telephones & Pagers | $870 | $870 | $870 | $870 | $870 | $870 | $5,220 |
| 7025 | Bank Charges | $140 | $140 | $140 | $140 | $140 | $140 | $840 |
| 7030 | Other G & A Expenses | $80 | $80 | $80 | $80 | $80 | $80 | $480 |
| 7037 | Management Fees @4% | $9,849 | $9,987 | $10,127 | $10,267 | $10,384 | $10,462 | $61,075 |
| 7038 | Activity Fees @2% | $4,924 | $4,994 | $5,063 | $5,133 | $5,192 | $5,231 | $30,538 |
| 7051 | Property Taxes | $16,408 | $16,408 | $16,408 | $16,408 | $16,408 | $16,408 | $98,448 |
| 7052 | Insurance | $6,728 | $6,728 | $6,728 | $6,728 | $6,728 | $6,728 | $40,368 |
| 7057 | Association Dues | $3,161 | $3,161 | $3,161 | $3,161 | $3,161 | $3,161 | $18,966 |
| 9130 | Non Oper'l Acct/Legal/Prof Fee | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $12,000 |
| 9200 | Depreciation Expense | $137,091 | $137,091 | $137,091 | $137,091 | $137,091 | $137,091 | $822,546 |
| | **Total Property Expenses** | $261,666 | $260,374 | $260,583 | $260,793 | $260,969 | $274,630 | $1,579,014 |
| | **Net Operating Income** | ($15,446) | ($10,694) | ($7,420) | ($4,124) | ($1,371) | ($13,078) | ($52,133) |
| | **Cash Flow Analysis** | | | | | | | |
| | Net Operating Income | ($15,446) | ($10,694) | ($7,420) | ($4,124) | ($1,371) | ($13,078) | ($52,133) |
| | Adjustments: | | | | | | | |
| | Property Tax Amortization | $16,408 | $16,408 | $16,408 | $16,408 | $16,408 | $16,408 | $98,448 |
| | Property Tax Payments | | ($49,224) | | | ($49,224) | | ($98,448) |
| | Insurance Amortization | $6,728 | $6,728 | $6,728 | $6,728 | $6,728 | $6,728 | $40,368 |
| | Insurance Payments | | | ($10,574) | ($8,074) | ($8,074) | ($8,074) | ($34,794) |
| | Depreciation Expense | $137,091 | $137,091 | $137,091 | $137,091 | $137,091 | $137,091 | $822,546 |
| | Capital Expenses (1) | ($1,000) | | | | | | ($1,000) |
| | **Net Cash Flow** | $143,781 | $149,533 | $93,009 | $148,029 | $101,559 | $139,075 | $774,986 |

(1) Bus Repair 11/10

# EXHIBIT "2"

Lenard E. Schwartzer
Nevada Bar No. 0399
Jeanette E. McPherson
Nevada Bar No. 5423
Jason A. Imes
Nevada Bar No. 7030
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com
Proposed Attorneys for Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| In re:<br><br>CAREFREE WILLOWS, LLC,<br><br>Debtor. | Case No. BK-S-10-<br>Chapter 11<br><br>**INTERIM ORDER AUTHORIZING THE USE OF CASH COLLATERAL**<br><br>Date:<br>Time:<br><br>Final Hearing Date:<br>Final Hearing Time: |
|---|---|

The Emergency Motion for an Order Authorizing the Use of Cash Collateral on an Interim and Continuing Basis [Docket #___] (the "Motion") having come before this Court pursuant to an Order Shortening Time [Docket #____], the Order Shortening Time and Motion having been served as shown by the Certificate of Service [Docket #____], there being no opposition, the Court having reviewed the Motion and finding good cause, it is

**ORDERED** that the Debtor is authorized to use the revenue generated by its senior

housing complex (the "Housing Complex") to maintain the Housing Complex, for payment of maintenance expenses, management and employees, real estate taxes, insurance premiums, and utilities incurred by the Housing Complex, and for no other purposes as stated in the budget provided to the Court, a copy of which is attached hereto as **Exhibit "1;"** and it is further

**ORDERED** that Union Bank of California has a replacement lien in cash collateral; and it is further

**ORDERED** that a final hearing on the Motion will be held on _____ at _____.

Submitted by:

_____
Lenard E. Schwartzer, Esq.
Schwartzer & McPherson Law Firm
2850 South Jones Blvd., Suite 1
Las Vegas, NV  89146
*Proposed Attorneys for Debtor and Debtor in Possession*

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that:

\_\_\_\_\_   The court has waived the requirement set forth in LR 9021 (b)(1).
\_\_\_\_\_   No party appeared at the hearing or filed an objection to the motion.
__X__   I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated above.
\_\_\_\_\_   I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

# # #