ALAN R. SMITH, ESQ.
Nevada Bar No. 1449
Law Offices of Alan R. Smith
505 Ridge Street
Reno, Nevada 89501
Telephone: (775) 786-4579
Facsimile: (775) 786-3066
Email: **mail@asmithlaw.com**

*ELECTRONICALLY FILED - July 19, 2011*

Counsel for Debtor

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

—ooOoo—

| | |
|---|---|
| In re:<br><br>CAREFREE WILLOWS, LLC,<br>a Nevada limited liability company,<br><br>Debtor.<br>_____/ | CASE NO. BK-S-10-29932-MKN<br><br>Chapter 11<br><br>**REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>Hearing Date: July 21, 2011<br>Hearing Time: 1:30 p.m. |

Debtor, CAREFREE WILLOWS, LLC, by and through its counsel, Alan R. Smith, Esq., of the Law Offices of Alan R. Smith, hereby files its Reply Brief In Support Of Motion To Compel Production Of Documents from AG/ICC Willows Owner, LLC (hereinafter "AG"). This reply is based upon the following points and authorities.

### POINTS AND AUTHORITIES

**1.     Background**

The background is generally set forth in the Debtor's motion, and the Opposition To Motion To Compel Production Of Documents filed by AG (the "Opposition"). In essence, the Debtor has designated documents which it desires to utilize in connection with its Motion To Designate Claims Of AG/ICC And Affiliates. The thrust of Debtor's Motion To Designate Claims Of AG/ICC And Affiliates is essentially that AG, from the outset, had a strategy and plan to takeover the ownership of the Debtor's property, as opposed to being

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Carefree Willows\Mot Compel\Reply Supt Mot Compel 071911-dlg.wpd

1  treated as a creditor under a plan. The documents sought to be utilized by the Debtor are
2  designed to discover the intent of AG following the purchase of the loan secured by the first
3  deed of trust upon the Debtor's property.
4      The production of these documents by AG has been opposed on two grounds. First
5  of all, AG seeks a protective order on the grounds that the documents sought to be produced
6  are confidential, and should be only produced under seal. That is dealt with by a separate
7  motion before this Court. Secondly, AG has produced various documents which are
8  redacted, or even in some instances entirely blank, as discussed below. AG asserts that the
9  redaction is appropriate either to protect disclosure of the purchase price paid for the loan,
10 or on the basis that the documents are privileged or protected by the work-product doctrine.
11 The Debtor acknowledges that AG may redact the purchase price, but the redaction in the
12 documents provided is so extensive it is clearly well beyond the issue of the purchase price.
13     In essence, the documents which AG has redacted are emails between persons who
14 are not attorneys. The Debtor is uncertain of the identity of some of the persons, or their
15 relationship of those persons to the Debtor. AG has not provided an explanation of identity
16 of the persons in the subject emails.
17     There are eight emails which are completely blank, and fourteen additional emails
18 which are for the most part are completely redacted.
19     The only possible way in which the documents may be analyzed is if they are
20 submitted to the Court *in camera*. Otherwise, the Debtor and this Court are relegated to
21 relying upon representations of AG as to what it believes are privileged communications.
22 Accordingly, the Debtor submits that the documents should be provided to the Court *in*
23 *camera*. The following addresses the legal principles by which AG asserts that the
24 documents need not be produced in an unredacted form.
25     **2.    The documents are not protected by the attorney/client privilege.**
26     AG argues that communications among an attorney and employees outside the
27 control group are privileged, citing *Upjohn Co. v. U.S.*, 499 U.S. 383, 391 (1981). The
28 Debtor agrees. It is not unusual for an attorney to need to speak with a lower level

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Carefree Willows\Mot Compel\Reply Supt Mot Compel 071911-dlg.wpd -2-

1  employees in order to properly prepare the case. However, in this case, none of the
2  communications are communications to or from an attorney. They are communications
3  between or among non-attorney individuals.

4    AG asserts that to the extent that those emails discuss or reference attorney's advice,
5  they are protected. Although sometimes discussions among non-attorneys may be
6  privileged, AG has misunderstood the rule, and misapplied it to communications never
7  intended to be protected by the rule. According to AG, virtually every communication
8  among non-attorney individuals which in any way mention attorney's advice or relates to
9  attorney's advice, is protected. That is not the rule.

10    In support of its proposition, AG cites *Upjohn, supra*. However, *Upjohn* only dealt
11  with communications between a party's employees and the party's attorney, and is therefore
12  inapplicable to the matter before this Court.

13    AG also cites *Smithkline Beecham Corp. v. Basf Corp.*, 232 F.R.D. 467 (E.D. Pa.
14  2005). Although *Smithkline* discussed the protection of communication among non-
15  attorneys, it does not stand for the proposition promulgated by AG. In *Smithkline* the court
16  held that in the case of a corporate client, privileged communications may be shared by non-
17  attorney employees in order to relay information provided by attorneys. *Id.*, page 477.
18  Furthermore, documents subject to the privilege may be transmitted between non-attorneys
19  so that the corporate party may be properly informed. *Id.*, page 477. In *Smithkline*, the
20  plaintiff did not identify any specific attorney with whom a confidential communication was
21  made, and the court held that where such information was absent, there was insufficient
22  detail to demonstrate fulfillment of the legal requirements for application of the privilege.
23  Non-privileged communications among corporate officers or employees which are copied
24  to counsel are not protected unless they were for the purposes of securing or providing legal
25  advice or legal services. *Id.*, page 478.

26    AG also cites *Shriver v. Baskin-Robbins Ice Cream Co., Inc.*, 145 F.R.D. 112, 114
27  (D. Colo. 1992), for the proposition that communications between non-attorney agents of
28  a business entity that reflect confidential attorney/client communication for the purpose of

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Carefree Willows\Mot Compel\Reply Supt Mot Compel 071911-dlg.wpd      -3-

1  rendering legal advice are protected. However, that is not what is said in the case. In
2  *Shriver*, an attorney memorandum providing legal advice was accidently produced, and
3  when the mistake was discovered the attorney/client privilege was asserted. The court held
4  that "an otherwise privileged communication by a lawyer to a corporate agent does not lose
5  its protected status simply because the agent then conveys the attorney's opinion to a
6  corporate committee charged with acting on such issues." *Id.*, page 114.

7  In *FTC v. Glaxosmithkline*, 294 F.3d 141 (D.D.C. 2002), also relied upon by AG, the
8  court considered whether the distribution of an attorney/client protected document among
9  corporate officers and employees constituted a waiver of the attorney/client privilege. The
10 court held that when attorney/client documents were distributed on "need to know basis,"
11 or to employees that were "authorized to speak or act for the company," the privilege
12 remained, and the documents were confidential.

13 Similarly, in *Scholtisek v. Eldre Corp.*, 441 F.Supp.2d 459 (W.D.N.Y. 2006), the
14 court held that dissemination of privileged communication did not constitute a waiver of the
15 attorney/client privilege provided the recipient had a "need to know" of the content of the
16 communication in order to perform his or her job effectively or make informed decisions.
17 *Id.*, page 464.

18 The communications which AG asserts are protected are the following:

19 1. Document 2206. A completely redacted document among an alleged officer
20 of Interwest and an alleged officer of Angelo Gordon, not copied to attorney. Impossible
21 to tell the content.

22 2. Document 2221. A completely redacted document of an email between an
23 alleged officers of Interwest and an alleged officer of Angelo Gordon. Again, absolutely
24 no content disclosed.

25 3. Document 2317. A completely redacted document between an alleged officer
26 of AG and an alleged officer of Angelo Gordon. Impossible to tell content.

27 4. Document 2807. An entirely redacted email between alleged officers of
28 Interwest. Impossible to tell content.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Carefree Willows\Mot Compel\Reply Supt Mot Compel 071911-dlg.wpd    -4-

1      5.     Document 6304. An email communication between officers of AG or Interwest. Entire content is redacted. In addition it includes a second email copied to Debtor's counsel, with the entire content redacted.

As discussed in the cases above, the rules protecting communications among non-attorneys are as follows:

1. Privileged communication may be shared among non-attorney employees in order to relay information provided by attorneys.

2. Privileged documents may be transmitted between non-attorneys so that the corporate party may be properly informed.

3. Party seeking protection has the duty to provide sufficient details to demonstrate fulfillment of the legal requirement for application of the privilege.

4. Correspondence among non-attorney officers or employees which are copied to an attorney are not protected unless they were for the purpose of securing or providing legal advice.

5. Attorney/client privileged documents may be transferred among employees on a need to know basis, or to employees authorized to speak or act for the company.

AG has not identified its burden of proof that the subject emails are protected by the attorney/client privilege. There is no showing whatsoever that confidential information was discussed. There is no showing that information was being gathered to assist an attorney. There is no showing that an attorney/client privilege memo was transmitted or transferred. There is no showing that any attorney/client communication was maintained confidential, on a "need to know" basis.

In short, AG would have us believe that the email communications among any person within AG or any of its related organizations are protected as long as an attorney's advice is even mentioned. As stated above, that is not the rule. Furthermore, AG has not even submitted sufficient evidence that there was even a discussion concerning an attorney's advice. Because AG has completely failed on its burden of proof to demonstrate the documents are privileged, they should be turned over to the Debtor in unredacted form. At

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Carefree Willows\Mot Compel\Reply Supt Mot Compel 071911-dlg.wpd    -5-

1  the very least, the documents should be produced to the Court in unredacted form so that
2  the Court may determine if AG has properly asserted the privilege.
3      **AG has misconstrued the common interest privilege.**
4      AG asserts that Document 1978 is protected by the common interest privilege. AG
5  is mistaken, and the common interest privilege does not apply in this case.
6      In *In re Mortgage & Realty Trust*, 212 B.R. 649 (C.D. Cal. 1997) cited by AG, the
7  court explained the common interest privilege stating:

> "The common interest privilege applies where (1) the communication was made by separate parties in the course of a matter of common interest, (2) the communication was designed to further that effort, and (3) the privilege has not been waived. . .the privilege applies whenever the communication is made in order to facilitate the rendition of legal services to the clients involved in the conference."

*Id.*, page 653.

12     The case of *Continental Oil Co. v. United States*, 330 F.2d 347 (9th Cir. 1964), cited
13 by AG, involved a memoranda prepared by an attorney after interviewing witnesses for a
14 grand jury subpoena. The memoranda were exchanged among attorneys who represented
15 the defendant in similar related grand jury proceedings. The case is not applicable to this
16 situation because here there were no documents exchanged among attorneys.
17     The case of *In re Teleglobe Communications Corp.*, 493 F.3d 345 (3rd Cir. 2007),
18 was particularly instructive. That case involved separate attorneys sharing information to
19 allow the attorneys to coordinate their clients' criminal defense. The court held:

> "Because the common-interest privilege is an exception to the disclosure rule, which exists to prevent abuse, the privilege should not be used as a *post hac* justification for a client's impermissible disclosures. The attorney-sharing requirement helps to prevent abuse by ensuring that the common-interest privilege only supplants the disclosure rule when attorneys, not clients, decide to share information in order to coordinate legal strategies."

*Id.*, page 365.

25     The rules established by the above-cases are as follows:
26     1. The communication must be made by parties in the course of a matter of common
27 interest.
28     2. The communication must be designed to further that interest.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Carefree Willows\Mot Compel\Reply Supt Mot Compel 071911-dlg.wpd    - 6 -

1        3. The communication must be made in order to facilitate the rendition of legal
2  services to each of the clients involved.
3        4. The common interest privilege also only applies when the attorneys representing
4  different clients share information.
5        In the matter before this Court, there is no showing of a common interest between
6  Union Bank and the Debtor. AG is subject to a motion to designate before this Court,
7  Union Bank is not. Union Bank is not the subject of any motion or litigation brought by the
8  Debtor. Accordingly, the communication between the Debtor and Union Bank could not
9  be designed to further joint effort in providing a defense. Nor could the communication be
10 made in order to facilitate the rendition of legal services to both the Debtor and Union Bank,
11 since Union Bank was not the target of the Debtor. Finally, the communications were
12 among clients, not attorneys, and therefore not subject to the common interest doctrine.
13 This document should be produced in unredacted form.
14       **The work-product doctrine does not protect the production of documents by AG.**
15       AG asserts that even if the above attorney/client privilege is not applicable, and the
16 common interest privilege is not applicable, the documents are nevertheless privileged by
17 the work-product doctrine. AG is wrong.
18       The case of *U.S. v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011), cited by AG, generally
19 described the work-product doctrine as "the work-product doctrine covers documents with
20 a compilation of materials prepared by agents of the attorney in preparation for litigation.
21 *Id.*, page 567. The court went on to state,

> "To quality for work-product protection, documents must: (1) be 'prepared in anticipation of litigation or for trial' and (2) be prepared 'by or for another party or by or for that other party's representative.' *In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt. (Torf)*, 357 F.3d 900, 907 (2004). In circumstances where a document serves a dual purpose, that is, where it was not prepared exclusively for litigation, then the 'because of' test is used. *Id.* Dual purpose documents are deemed prepared because of litigation if 'in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation.' *Id.* In applying the 'because of' standard, courts must consider the totality of the circumstances and determine whether the "'document was created because of the anticipated litigation, and would not have been created in substantially similar form but for the prospect

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Carefree Willows\Mot Compel\Reply Supt Mot Compel 071911-dlg.wpd         -7-

of litigation.'" *id*. At 908 (quoting *United States v. Adlman*, 134 F.3d 1194 (2d Cir. 1998))."

As stated in *In re Grand Jury Subpoena (Torf)*, 357 F.3d 900, 907 (9th Cir. 2004):

"If the document would not have been generated 'but for' litigation, it is privileged. However, if it was generated for purposes other than litigation, even though litigation may have been a 'real possibility,' it must be disclosed."

*Id.*, page 904.

Finally, in *In re Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573 (9th Cir. 1992), the court considered whether or not the adjuster's report prepared for the insurance company was protected by the work-product doctrine. The court stated that the primary purpose of the work-product rule is to prevent exploitation of a party's efforts in preparing for litigation. *Id.*, page 577. The court went on to state that "opinion work-product may be discovered and admitted when mental impressions are at issue in a case and the need for the material is compelling." *Id.*, page 577.

In this case, AG asserts that virtually all the documents are protected by the work-product doctrine. However there is no showing that any document was prepared in anticipation of litigation. In fact there wasn't any litigation pending until the Debtor commenced its Motion To Designate Claims Of AG/ICC And Affiliates. AG made no showing that the communications or information contained therein were to be used in litigation. AG has not shown that the communications would not have been made but for the prospect of litigation. Finally, the information concerns the impressions and opinions of AG, which directly relates to the Debtor's assertion that AG had an intent from the outset to obtain ownership of the Debtor's property, and engaged in a strategy to accomplish that purpose. The need for that information is compelling, because there is no other source to obtain that information. For the foregoing reasons, the work-product doctrine does not prevent the discovery of the unredacted documents by the Debtor.

The rules established by the above-cases are as follows:

1. The document must be prepared in anticipation of litigation or trial.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Carefree Willows\Mot Compel\Reply Supt Mot Compel 071911-dlg.wpd    -8-

1    2. If a document serves a dual purpose it can be protected if it was prepared because
2    of the prospect of litigation.
3    3. To be protected, the work-product must be in furtherance of efforts to prepare for
4    litigation.
5    4. The discovery of work-product may be allowed when mental impressions are at
6    issue and the need for the materials is compelling.
7    Here AG has not provided any evidence that the work-product doctrine is
8    inapplicable to any of the subject documents. None of the documents appear to fall within
9    the work-product doctrine, and therefore unredacted copies should be provided.
10   **Conclusion.**
11   Essentially the Debtor seeks discovery of unredacted versions of the emails among
12   non-attorneys. The individuals may or may not be employees of AG, or employees of an
13   affiliated entity with AG - the Debtor simply does not know because the information has not
14   been provided. In any event, AG has not satisfied its burden of proof that production of the
15   documents is protected. At the outset, AG has not provided sufficient detail either in its
16   briefing, or in its privilege log, to enable this Court to determine that the privilege is
17   applicable. That is AG's burden, not the Debtors. As set forth above, the documents are
18   not protected by the attorney/client privilege because they are not communications with an
19   attorney, did not involve the promulgation of privileged communications from an attorney,
20   are not made for the purpose of assisting any litigation, and are not shown to have been
21   disseminated on a need to know basis.
22   The documents are not protected by the common interest rule because Union Bank
23   does not have a similar legal interest with the Debtor, as it is not defending the Motion To
24   Designate Claims Of AG/ICC And Affiliates. AG has not showed that any information was
25   transmitted for the purpose of facilitating the rendition of legal services or for similarly
26   situated clients. Finally, the communication must be among counsel, which does not apply
27   in this case.
28   The documents are not protected the work-product doctrine. There is no showing

**Law Offices of**
**ALAN R. SMITH**
**505 Ridge Street**
**Reno, Nevada 89501**
**(775) 786-4579**

H:\Carefree Willows\Mot Compel\Reply Supt Mot Compel 071911-dlg.wpd - 9 -

1 that the communications were made in anticipation of litigation. In fact there was no
2 litigation at that time in the sense that there was no pending motion to designate claims.
3 There was not even a showing by AG that there was any anticipated litigation. AG did not
4 show that the communication would not have been generated "but for" either litigation.

5     Finally, there is a compelling reason to produce the documentation. The Debtor is
6 attempting to discover the intent of AG in purchasing the Carefree claim. The Debtor
7 believes that the intent is relevant to its Motion To Designate Claims Of AG/ICC And
8 Affiliates. The Debtor believes that the documents may tend to show that AG had an intent
9 from the outset to obtain ownership of the property, and had a strategy to accomplish the
10 same. That purpose is inconsistent with the policy of the Bankruptcy Code, which provides
11 that a creditor should act within its interests of being treated as a creditor, and not for an
12 ulterior motive. *See*, *In re DBSD North America, Inc.*, 421 B.R. 133 (S.D. NY 2009). AG
13 should turnover unredacted copies of the requested documents.

14     DATED this 7th day of July, 2011.

                                         LAW OFFICES OF ALAN R. SMITH

                                             */s/ Alan R. Smith*
                                By_____
                                    ALAN R. SMITH
                                    Attorney for Debtor

**Law Offices of**
**ALAN R. SMITH**
**505 Ridge Street**
**Reno, Nevada 89501**
**(775) 786-4579**

H:\Carefree Willows\Mot Compel\Reply Supt Mot Compel 071911-dlg.wpd - 10 -